HONORABLE RONALD B. LEIGHTON

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAPHNE INGRAM, a single woman, individually and on behalf of her minor son, D.I., | CASE NO. C12-5892RBL |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

9
10
11
12
13
14

15

**I. FINDINGS OF FACT**

16      1.      D. I. was born in 1995 at Fort Leonard Wood, Missouri.  As the son of a career

17  Army non-commissioned officer, D. I. moved several times before he began school.  His parents

18  divorced when D. I. was young and D. I. rarely saw his father after the divorce.

19      2.      D. I. attended schools in Chicago, Lakewood, and on Fort Lewis and began high

20  school at Clover Park High School in the fall of 2009.  Later in the fall of 2009, D. I. transferred

21  to Chief Leschi High School as he was interested in playing basketball for the high school.

22      3.      D. I. attended Chief Leschi High School for the remainder of his freshman year

23  and then as a sophomore during the 2010-2011 school year from September 2010 until June

24

1   2011.  D. I. played basketball and football during his sophomore year.  He completed both

2   seasons without suffering any injuries.

3       4.      While attending Chief Leschi High School from the fall of 2009 until the spring

4   of 2012, D. I. lived, at various times, with his mother, his mother's former boyfriend, parents of

5   teammates, and Chief Leschi staff members.

6       5.      In June 2011, D. I. participated in spring football at Chief Leschi High School

7   under the direction of Head Coach Sauni Savini and Assistant Head Coach Kirk Willis.

8       6.      Chief Leschi is a member of the Washington Interscholastic Activities

9   Association (WIAA).

10      7.      Chief Leschi's School Handbook/Code of Conduct (Handbook) applies aspects of

11  RCW 28A.600.190 (commonly referred to as the "Zackery Lystedt" law) to its athletic teams: (1)

12  it requires that each student athlete sign the Lystedt Law Form and (2) it requires that "A student

13  athlete who is suspected of sustaining a concussion or head injury in a practice or game shall be

14  removed from competition at that time. A student athlete who has been removed from play may

15  not return to play until the athlete is evaluated by a licensed healthcare provider trained in the

16  evaluation and management of concussion and receives written clearance to return to play from

17  that health care provider. No athlete will be allowed to participate until both student-athlete and

18  parents/legal guardians have read and signed the Lystedt Law addendum to the athletic code of

19  conduct."

20      8.      Chief Leschi's Handbook also requires that: "prior to participation in a high

21  school [sport], a student shall undergo a medical examination and be approved for interscholastic

22  athletic competition by a medical authority . . . Prior to each subsequent year of participation a

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 2

1   student shall furnish a statement, signed by a medical authority licensed to perform a physical

2   examination, which provides clearance for continued athletic participation."

3       9.      Chief Leschi's Handbook also states that "Student athletes requiring the attention

4   of a physician due to illness and/or injury must have a physician's written release prior to

5   returning to practice and/or competition."

6       10.     Audrey Adams was the athletic director for Chief Leschi for the school years

7   2010-2011 and 2011-2012.  She routinely checked the students' eligibility requirements every

8   week during the season.  She checks grades, physical exams, parental or caregiver authorizations

9   to participate in a sport, and acknowledgment of the requirement of Zachery Lystadt law.  When

10  the requirements are fulfilled she issues a "yellow card" to the student to give to the coach.

11  Coach Savini received a "yellow card" for D.I. before the Ocasta game.

12      11.     D.I. completed a physical in October 2009.  Physical exams must be done every

13  two years according to WIAA policy.  There is some ambiguity in the Chief Leschi Handbook

14  about the requirement.  Chief Leschi is a K through 12 school.  Ms. Adams says that,

15  notwithstanding the distinction between middle school and high school, the policy as applied was

16  every two years.  D.I. needed to have a physical by October 22, 2011 before continuing with the

17  football season.

18      12.     Ms. Adams confirms that D.I. and his mother, or her former boyfriend— Joshua

19  Pointer—signed the paperwork, including medical authorization, in September 2011.  Some

20  forms were misplaced but Ms. Adams assures the parties and the Court that the appropriate

21  authorizations were received by the school.

22      13.     All of Chief Leschi's football coaches, including coach Savini and assistant

23  coaches are trained to recognize and manage concussions.  Not only has coach Savini read

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 3

1    Washington State's laws regarding concussions, he has also completed a concussion training

2    program created and administered by the WIAA.

3         14.    Coach Savini and all of Chief Leschi's assistant coaches are federal employees for

4    purposes of this claim.

5         15.    D. I. suffered a head injury at Chief Leschi spring football practice on June 13,

6    2011 but did not inform his coaches of his head injury.  There is no readily available test or

7    imaging study to diagnose concussions.  It is a functional injury of the brain and the diagnosis

8    and the assessment of concussions is extremely subjective.  Coaches often have to rely on

9    players telling them when they have suffered head injuries.

10        16.    Coach Savini witnessed D.I.'s helmet-to-helmet hit, or was aware of it.

11        17.    On June 14, 2011, Phillip Dillon drove D.I. to Lakewood Pediatrics. D.I.

12   indicated to Dr. Darryl Tan of Lakewood Pediatrics that after he was hit, he felt throbbing in his

13   head, a sense of spinning when he collided with his teammate, and although he did not lose

14   consciousness, he was foggy and "saw stars."

15        18.    Dr. Tan wrote in his chart note that D. I. reported that he had butted heads with

16   another player at practice on June 13, 2011 while both were wearing helmets.  D. I. told Dr. Tan

17   that  when he went to the bench, he was told that he looked like he was going to pass out.  On

18   June 14, 2011, D. I. reported that he had intermittent headache, shoulder, and neck pain but had

19   not vomited.  D. I. told Dr. Tan that he attended school and practice on June 14, 2011.

20        19.    Dr. Tan noted that his impression was that D. I. had suffered a concussion and

21   instructed him to avoid returning to play until he was cleared and asymptomatic and he should

22   return to the clinic in a week.

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 4

1    20.    The last day of school at Chief Leschi for the 2010-2011 school year was June 17,

2    2011.  Under Washington Interscholastic League rules, high school football teams are allowed

3    to practice for 10 days in the spring but must finish practice before the last day of school.

4    21.    The last day of football practice for the Chief Leschi football team was June 16,

5    2011.

6    22.    D.I. did not return to the last three days of football practice in June 2011; school

7    (and practice) ended on June 17, 2011.

8    23.    D.I. did not complete a follow-up examination as ordered by Dr. Tan of

9    Lakewood Pediatrics.

10   24.    D.I. reported to one of his doctors (Dr. Stephen Glass) that he had suffered a

11   second head injury during the summer of 2011.  He also reported he participated in scheduled

12   practices during the summer of 2011.

13   25.    There is no evidence that Chief Leschi scheduled or held summer practices during

14   2011 in violation of WAIA rules.  Similarly, there is no evidence that D.I. suffered a second head

15   injury during any form of summer football practices.

16   26.    D.I. claims that Coach Savini told him or Phillip Dillon to go to the doctor after

17   his head injury suffered on June 13, 2011.

18   27.    Coach Savini and Phillip Dillon deny that Coach Savini told Phillip Dillon to take

19   D.I. to the doctor to be checked out for a head injury.  Dillon admits that he did take D.I. to the

20   doctor's office.

21   28.    Daphne Ingram claims that she made a follow-up appointment with Lakewood

22   Pediatrics one week after the June 14, 2011 appointment and gave the appointment card to

23   Phillip Dillon and asked him to take D.I. to the appointment.

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 5

29.     Phillip Dillon denies that Daphne Ingram asked him to get D.I. to the follow-up appointment.

30.     Coach Savini denies that he witnessed or was told of the effects of a head injury suffered by D.I. on June 13, 2011, or that D.I. had a doctor's appointment concerning a head injury.

31.     On September 5, 2011, one week before Chief Leschi's first game, coach Savini reviewed and passed the WIAA's "certification" for concussion management.

32.     Chief Leschi had its first football game of its 2011 season on September 10th against Ocosta High School. All of Chief Leschi's football coaches attended the game, in addition to athletic director Audrey Adams and assistant athletic director Orlonda Castillo. Both Ms. Adams and Ms. Castillo had also received concussion certifications.

33.     D.I. was one of Chief Leschi's best players: he played quarterback on offense, cornerback on defense, and on all kickoff and punt special teams.

34.     Playing cornerback on one of the game's first plays, D.I. tackled the ball carrier who was running at him by lowering his head into the opposing player's stomach. This concerned D.I.'s teammate, Julien Dillon, who told D.I. to keep his head up when hitting. D.I.'s tackle also concerned coach Savini, who saw the hit and testified that "We always are concerned when they lead with their heads, but it was a good thing that he hit him in the stomach."

35.     Although the tackle was bad form and potentially dangerous, D.I. bounced up from the tackle and displayed no side-effects of any head injury.  D.I. denied any adverse symptoms from the tackle.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 6

1   36.     During the next 13 minutes, including the next 1.5 minutes of the game, D.I.

2   intercepted a pass on defense and threw a touchdown pass on offense.  To the trained eye he was

3   fine and performing as expected.

4   37.     After the touchdown pass, Chief Leschi called a quarterback keeper for D.I.  D.I.

5   suffered a hit that potentially could have hurt his head.  Once again he bounced up from the hit

6   and showed no adverse effects of head injury.  He came to the sideline for water.

7   38.     It was a hot day and all the players were hot and struggled to get air, including

8   D.I.

9   39.     D.I. says that at that moment, he told Coach Savini that his head hurt and he was

10   woozy.  He claims Coach Savani told him that he was fine and to go back in.  Coach Mix was

11   close in proximity to Coach Savini and D.I., and did not hear D.I. complain about a headache.

12   Coach Savini denies D.I. told him his head hurt or anything suggesting that he was hurt.

13   40.     Chief Leschi kicked an onside kick and D.I. jogged down the field for a few yards

14   without being touched. A timeout was called and D.I. went to the sideline for water.  Standing on

15   the field before the next play, D.I. took off his helmet.

16   41.     D.I. remained in the game at cornerback and on the next play—even though an

17   Ocosta offensive player "hardly pushed" him—D.I. fell back to the ground.  He laid there.

18   Coach Savini got to him.  D.I. said he was "burning up."  Coach Savini removed D.I.'s jersey

19   and shoulder pads.  D.I. was assisted off the field.  He got on all fours and vomited.  An

20   ambulance was called and D.I. was taken to Mary Bridge Children's Hospital.

21   42.     D.I. suffered a head injury during the Chief Leschi-Ocosta football game on

22   September 10, 2011.

23

24

43.     Prior to his removal from the game in the 1st quarter, D.I. did not inform his coaches of his head injury.

44.     From his first intake at Mary Bridge approximately 1.5 hours after leaving the field, D.I. began telling doctors and a staff RN that he remembered telling coach Savini that his head hurt after each of the two hits, and that each time coach Savini told him to keep playing.

45.     The credible evidence is that D.I. did not tell Coach Savini that he was hurt at any point in the game, except for when D.I. laid down and complained to Coach Savini that he was "burning up."

46.     D. I. was hospitalized at Mary Bridge Children's Hospital from September 10, 2011 until September 17, 2011.  D. I.'s initial CT scan was read as negative and he was first treated for a concussion and headache.

47.     On September 14, 2011 following a CT angiogram, Dr. Majid Al-Mateen, a pediatric neurologist, diagnosed D. I. as suffering from a subacute infarct within the inferior right cerebellar hemisphere involving the right posterior inferior cerebellar artery (PICA).  Dr. Al-Mateen wrote that the right PICA vascular insufficiency was likely related to trauma and a thromboembolic event.

48.     There are conflicting theories as to the etiology of the stroke suffered by D.I.  The defense experts put forth a theory of an embolism crossing a PFO (patent foramen ovale) and lodging in the PICA (posterior cerebellry artery).  The plaintiffs' experts theorized that D.I. suffered a vertebral artery injury, either with a small internal tear or possibly vertebral artery dissection, though not of a degree that could be documented neuroradiologically.  Defendant's theory was supported by the discovery of the PFO, an anomaly left over from D.I.'s time in the womb, where the oxygenated blood is supplied by the mother and by-passes the lungs of the

1    fetus.  Defendant's theory was factually improbable.  Plaintiffs' theory is bereft of factual

2    support, including any evidence that D.I. suffered dizziness or instability.

3          49.     The medical evidence is inconclusive as to the case of D.I.'s stroke.  Given the

4    evidence, or lack thereof, of negligence on the part of the school, coaches or administrator, the

5    etiology of the stroke is not relevant to the issues in this litigation.  In any event, plaintiffs have

6    the burden of proof and they have failed to meet their burden.

7                              **II. CONCLUSIONS OF LAW**

8          50.     This Court has jurisdiction over this matter.

9          51.     These claims are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.

10   §§ 1346(b) and 2671 *et seq*. "The Tort Claims Act was designed primarily to remove the

11   sovereign immunity of the United States from suits in tort and, with certain specific exceptions,

12   to render the Government liable in tort as a private individual would be under like

13   circumstances." *Richards v. United States,* 369 U.S. 1, 6 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

14         52.     This matter is properly brought pursuant to the Federal Tort Claims Act.  Under

15   the FTCA, liability and damages are determined according to the law of the place where the act

16   or omission occurred—the State of Washington, in this case. *See* 28 U.S.C. § 1346(b); *Richards*,

17   369 U.S. at 10-11; *Cummings v. United States*, 704 F.2d 437, 440 (9th Cir. 1983).

18         53.     The Administrators and Coaches responsible for the football program at Chief

19   Leschi School were not negligent in administering the eligibility requirements or monitoring the

20   safety and health of the players on the team, including D.I.

21

22

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 9

1    54.    Clerk shall enter judgment in favor of the defendant.

2    Dated this 10th day of March, 2014.

3

4    _____

5    RONALD B. LEIGHTON
     UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 10